IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **EMS USA, INC.** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:16-CV-01443** |
| | § | |
| **THE TRAVELERS LLOYDS** | § | |
| **INSURANCE COMPANY** | § | |

**TRAVELERS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, The Travelers Lloyds Insurance Company ("Travelers"), and files this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims of the plaintiff, EMS USA, Inc. ("EMS"), and would respectfully show unto this Honorable Court as follows:

### I. Summary of the Issue

In ruling on this motion, the Court faces one overriding threshold issue:

- **Direct Physical Loss of or Damage.** The Travelers policy affords coverage for "direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss." While an EMS subcontractor was performing drilling operations, a guide wire broke and a drill string became stuck. Unable to free the drill string, EMS decided to place the pipeline elsewhere. The pilot hole drilled by the subcontractor did not sustain any physical loss or damage. Yet, EMS claims the loss of use of the otherwise undamaged pilot hole constitutes direct physical loss of or damage to Covered Property. Does the claimed loss of use of the undamaged pilot hole constitute "direct physical loss of or damage to" Covered Property necessary to trigger the threshold grant of coverage under the Travelers policy? The answer to this question is "No".

1

## II.  Standard of Review

In Texas, the rules of construction for contracts likewise govern insurance policies. See D.R. Horton, Inc. v. Am. Guar. & Liab. Ins. Co., 864 F. Supp. 2d 541, 547 (N.D. Tex. 2012); Millis Dev. & Constr., Inc. v. Am. First Lloyd's Ins. Co., 809 F. Supp. 2d 616, 627 (S.D. Tex. 2011). Therefore, interpretation of an insurance policy is a question of law and proper for summary judgment. See D.R. Horton, Inc., 864 F. Supp. 2d at 547.

## III.  The Material Facts

This case concerns a Travelers builders' risk policy issued to EMS with effective dates from September 1, 2015 to September 1, 2016, policy no. QT-660-8070X278-TLC-15 ("the Travelers policy"). Ex. No. 1;  Ex. No. 2, ¶ 5.

In 2015, EMS entered into a contract with an operating company to construct a natural gas pipeline. Ex. No. 2, ¶ 6. EMS subcontracted the horizontal directional drilling work to Isaacks Contracting, Inc. ("Isaacks"). Id. Isaacks successfully drilled the pilot hole—but when the guide wire broke, the drill string became stuck. Id. EMS hired other subcontractors to try to free the drill string, but it remained stuck.  Ex. No. 4, 32:14-33:15. Undisputedly, Isaacks owned the broken guide wire and drill string. Ex. No. 4, 30:11-31:22, 110:9-110:15.  EMS eventually hired another subcontractor to start over and drill a new pilot hole approximately twenty feet below the undamaged pilot hole that was drilled by Isaacks. Ex. No. 4, 36:5-36:22.  EMS now contends the claimed loss of use of the undamaged pilot hole drilled by Isaacks entitles EMS to coverage under the Travelers

policy for the cost to place the line elsewhere.[1]  Ex. No. 2, ¶ 7; Ex. No. 3, Supplemental Answer to Interrogatory No. 4; Ex. No. 5, 25:5-25:16.

Travelers asks this Court to grant summary judgment and hold that there is no coverage under the Travelers policy because there was no direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.

### IV.  Summary of the Argument

The diagram below aims to concisely describe the issue in dispute:

"We will pay for **direct physical loss of or damage** to Covered Property caused by or resulting from a Covered Cause of Loss." Ex. No. 1, Travelers 000023.



**X**: The pilot hole unequivocally did not sustain **direct physical loss or damage**. Isaacks successfully drilled the pilot hole. The hole itself was not damaged, defective, or otherwise flawed. The only damaged property was the guide wire that broke and the drill string that became lodged. That is, the drill's purpose was fulfilled by creating a pilot hole; the sole damage was to the drilling guide wire itself. The guide wire is not Covered Property and EMS is not making claim for the damage to the guide wire.  Instead, EMS claims that the loss of use of the undamaged pilot hole constitutes direct physical loss of or damage to Covered Property—a claim that does not trigger the threshold grant of coverage under the Travelers policy.

### V.  Arguments and Authorities

On its face, the Travelers policy plainly states the losses and damages that it insures and excludes, starting with the threshold grant of coverage "for direct physical

---

[1] EMS is seeking recovery of the cost to try to free the drill string, the increased cost of the horizontal drilling subcontractor hired to replace Isaacks, and myriad other claimed costs and expenses EMS contends resulted from the loss of use of the pilot hole drilled by Isaacks.  To the extent necessary, the coverage issues and defenses implicated by the amounts and categories of claimed loss for which EMS seeks recovery will be addressed by separate motion.  See n.2 infra.

loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss." With no direct physical loss of or damage to Covered Property, i.e., property owned by EMS or for which EMS is legally liable, EMS now attempts to force a round peg into a square hole by disguising its failed business venture as a covered claim for physical damage. The threshold grant of coverage under the Travelers is not met because the pilot hole did not sustain any direct physical loss or damage. Therefore, there can be no coverage for the claim before any consideration is given to any of the other terms, conditions, limitations, and exclusions in the Travelers policy.[2]

**A. Coverage Grant.**

As is relevant to the present issue, the Travelers policy provides the following grant of coverage:

> **A. COVERAGE**
>
> We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.
>
> **1. Covered Property**
>
> Covered Property, as used in this Coverage Form, means the following types of property you own or for which you are legally liable, the value of which is included in the estimated "total project value" shown in the Declarations:

---

[2] As requested by Magistrate Judge Johnson, this motion focuses solely on the threshold coverage issue of whether EMS has alleged a claim "for direct physical loss of or damage to" Covered Property caused by or resulting from a Covered Cause of Loss. Dkt. No. 26. Travelers expressly reserves and does not waive its other coverage defenses including, without limitation:
  a. The extent to which the pilot hole can even constitute "Covered Property," see Travelers' January 17, 2017, third amended original answer, Dkt. No. 21, ¶ 20;
  b. The applicability of Exclusion 4. regarding faulty workmanship/construction, see id. ¶¶ 26-27;
  c. The applicability of Exclusion 2.a. regarding consequential loss, see id. ¶ 32;
  d. The applicability of Exclusion 2.3. regarding mechanical breakdown, see id. ¶¶ 28-29;
  e. The applicability and limitations of the coverage extensions and additional coverages in the Travelers policy, see id. ¶¶ 21-25; and
  f. EMS's burden under the doctrine of concurrent causation. See id. ¶¶ 37.

4

      **a.**    **Permanent Works**

Materials, equipment, machinery, supplies and property of a similar nature that will become a permanent part of the project described in the Declarations during completion of such project or that will be used or expended in the completion of such project.

Completion of the project includes site preparation (including demolition of existing buildings or structures), fabrication, assembly, installation, erection, alteration, renovation and similar construction activities.

      **b.**    **Temporary Works**

Cofferdams, construction forms, cribbing, falsework, hoarding, scaffolds, fencing, signs, office trailers (and their "contents") and similar temporary buildings or structures incidental to completion of the project described in the Declarations.

We will cover such property:

**(1)**    At the job site described in the Declarations;

\*\*\*

**2.**    **Property and Costs Not Covered**

Covered Property does not include:

\*\*\*

      **c.**    Land and land values and the value of cut, fill and backfill materials that existed at the job site prior to the date construction commenced.

But this restriction does not apply to:

**(1)** The value of cut, fill and backfill material purchased for use in the completion of the project to the extent the value of such property is included

       in the estimated "total project value" shown in the Declarations.

     **(2)** Labor, material and equipment charges incurred to move, remove, place or otherwise handle, cut, fill and backfill materials to the extent such costs are included in the estimated "total project value" shown in the Declarations.

Ex. No. 1, Travelers 000023.

  The first sentence of the coverage grant in the Travelers policy specifies the threshold that must be met to present a claim within coverage—i.e., "direct physical loss of or damage to Covered Property"—and this is the very thing that EMS's claim lacks. That is, the only property that sustained direct physical loss or damage was the guide wire owned by Isaacks for which EMS is not making claim. Thus, in a strained argument to create coverage where none exists, EMS contends the loss of use of the otherwise undamaged pilot hole constitutes direct physical loss of or damage to Covered Property. Yet, even if the pilot hole can constitute "Covered Property," which Travelers denies,[3] the hole was not damaged. Accordingly, the claim EMS has made fails to satisfy the threshold grant of coverage in the Travelers policy.

**B. The drilling process created an undamaged, non-defective pilot hole; the sole physical loss or damage was to the guide wire itself.**

  It is undisputed that the pilot hole did not sustain any direct physical loss or damage. Ex. No. 5, 26:17-26:22. Significantly, the Travelers policy is a builders' risk policy; that is, unlike many commercial general liability policies that offer coverage for the loss of use of tangible property that is not physically injured—the policy applicable to this

---

[3] See n.2 supra; Travelers' January 17, 2017, third amended original answer, Dkt. No. 21, ¶ 20.

case covers only the direct physical loss or damage of tangible property. Specifically, the threshold grant of coverage in the Travelers policy provides as follows:

> We will pay for **direct physical loss of or damage to** Covered Property caused by or resulting from a Covered Cause of Loss.

Ex. No. 1, Travelers 000023.

In this case, EMS alleges that during Isaacks' directional drilling work, a drill string became stuck in the pilot hole when a guide wire broke. Ex. No. 2, ¶ 6. Due to the failed attempts to remove the drill string, EMS claims that it "sustained a physical loss and damage in the amount of $2,712,958.64" as a result of the "loss of [use] of the pilot hole." Id.; Ex. No. 3, Supplemental Answer to Interrogatory No. 4; Ex. No. 5, 25:5-25:16. But EMS did not sustain any direct physical loss or damage as explained step-by-step below:

- Was the alleged loss or damage direct?
    - **No** direct injury to the pilot hole.
- Was the alleged loss or damage physical?
    - **No** effect to the pilot hole's physical condition.
- Did the pilot hole even sustain loss or damage?
    - **No** damage to the pilot hole.

Notably, to the extent relevant, though EMS may assert that the unusable pilot hole created cognizable loss of use of the pilot hole, such a loss is neither (1) physical nor (2) direct, but rather merely a non-covered consequence of a broken guide wire and stuck drill string owned by Isaacks for which EMS is not making claim. As regards the pilot hole itself, there was no external event or force that changed the physical properties and configuration of the hole such as, for example, fire, lightning, explosion, windstorm, sinkhole collapse, falling objects, weight of snow, ice, or sleet, earthquake, extreme

precipitation, or flood. Ex. No. 1, Travelers 000011-000012, 000017-000018, 000041, 000042-000049; Travelers' January 17, 2017, third amended original answer, Dkt. No. 21, ¶ 18, 11-12 of 22.

To be sure, Isaacks successfully drilled a non-defective pilot hole. The broken guide wire and stuck drill string did not cause any damage to the pilot hole. The pilot hole is undamaged, non-defective, and otherwise structurally sound for its intended use. As a result, the pilot hole's undamaged condition precludes coverage for EMS's claim made the basis of this suit and warrants summary judgment in favor of Travelers.

**C. The damaged guide wire is not Covered Property and does not trigger coverage.**

The broken guide wire is not Covered Property under the Travelers policy because that equipment was owned by Isaacks. Ex. No. 1, Travelers 000023; Ex. No. 4, 30:11-31:22, 110:9-110:15. Moreover, EMS is not seeking recovery of the cost to repair or replace the broken guide wire. Ex. No. 5, 24:15-24:20. Accordingly, to determine whether the threshold grant of coverage under the Travelers policy is met, i.e., whether there was direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss, the inquiry must start with the undamaged pilot hole, not the broken guide wire.

When the coverage inquiry starts where it should and must, based both on the terms of the Travelers policy and the facts made the basis of EMS's claim, the threshold grant of coverage cannot be met because there was no direct physical loss of or damage to the item of "property" for which EMS contends coverage is triggered. Accordingly, there can be no coverage under the Travelers policy for the present claim and this motion for summary judgment should be granted.

## VI. Summary Judgment Evidence

In support of this motion, Travelers attaches the following evidence, which it incorporates in this response by reference:

- Exhibit 1: Travelers builders' risk policy no. QT-660-8070X278-TLC-15 with effectives dates from 09/01/15 to 09/01/16;

- Exhibit 2: EMS USA Inc.'s January 6, 2017 first amended complaint;

- Exhibit 3: EMS USA Inc.'s April 11, 2017 supplemental answers to Travelers' interrogatories;

- Exhibit 4: March 10, 2017 deposition testimony of Ron Wochner, EMS USA Inc.'s Division President; and

- Exhibit 5: April 12, 2017 deposition testimony of Alexander J. Buehler, Rule 30(b)(6) corporate representative of EMS USA, Inc.

## VII. Conclusion

For the reasons stated herein and the evidence presented, Travelers' motion for summary judgment should be granted.

WHEREFORE, PREMISES CONSIDERED, the defendant, The Travelers Lloyds Insurance Company, moves and prays that the Court grant The Travelers Lloyds Insurance Company's motion for summary judgment and for such other and further relief, both general and special, legal and equitable, to which The Travelers Lloyds Insurance Company may show itself justly entitled to receive.

[SIGNATURE PAGE TO FOLLOW]

Respectfully submitted,

ORGAIN BELL & TUCKER, LLP
P O Box 1751
Beaumont, TX 77704-1751
(409) 838-6412
(409) 838-6959 facsimile

/s/ Greg C. Wilkins
Greg C. Wilkins
State Bar No. 00797669
Southern District Bar No. 33280
gcw@obt.com
Jefferson W. Fisher
State Bar No. 24093437
Southern District Bar No. 2523494
jfisher@obt.com

ATTORNEYS FOR DEFENDANT,
THE TRAVELERS LLOYDS
INSURANCE COMPANY

OF COUNSEL:

ORGAIN BELL & TUCKER, LLP
1415 Louisiana Street, Suite 4150
Houston, Texas 77002
(713) 333-6700
(713) 333-6701 facsimile

/s/ Chris A. McKinney
Christopher A. McKinney
State Bar No. 24044544
Southern District Bar no. 859156
cam@obt.com

ATTORNEYS FOR DEFENDANT,
THE TRAVELERS LLOYDS
INSURANCE COMPANY

## **CERTIFICATE OF SERVICE**

     I do hereby certify that on the 28th day of April, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all known counsel of record.

                                      /s/ Greg C. Wilkins
                                        Greg C. Wilkins