# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| EMS USA, INC. | § | |
| | § | |
| v. | § | CASE NO. 4:16-CV-01443 |
| | § | |
| THE TRAVELERS LLOYDS | § | |
| INSURANCE COMPANY | § | |

## PLAINTIFF EMS USA, INC.'S RESPONSE TO TRAVELERS' SECOND MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

COATS | ROSE, P.C.

By: /s/ David Lynch _____

David S. Lynch
Texas Bar No. 12725825
dlynch@coatsrose.com
Daniel F. Shank
Texas Bar No. 18090400
dshank@coatsrose.com
Teia M. Kelly
Texas Bar No. 24074752
tkelly@coatsrose.com
9 Greenway Plaza, Suite 1100
Houston, Texas 77046
Telephone: (713) 651-0111
Facsimile: (713 651-0220

ATTORNEYS FOR PLAINTIFF
EMS USA, INC.

## TABLE OF CONTENTS

Introduction .................................................................................................... 1

Brief Summary of Response ............................................................................ 2

Evidence .......................................................................................................... 3

Factual Overview ............................................................................................ 4

Standards of Review ....................................................................................... 7
    A. Motion for Summary Judgment................................................................ 7
    B. Interpretation of Insurance Policies in Texas. ....................................... 8
       i. The builders risk insurance policy is considered as a whole. ...................... 8
       ii. Ambiguity is resolved in favor of EMS. ..................................................... 8
       iii. Limitations on coverage are even more liberally resolved in favor of
       EMS.................................................................................................................. 9

Argument and Authorities............................................................................... 9
    A. The pilot hole is Covered Property under the Policy. ................................. 10
       i. The pilot bore hole is a temporary structure............................................. 11
       ii. EMS' position is consistent with Texas law. ............................................ 14
    B. EMS' losses fall under the resulting loss exceptions to the faulty
    workmanship, defective materials, and mechanical breakdown policy exclusions.
      15
    C. The breaking of the guide wire was not a mechanical breakdown. ............. 19
    D. EMS' losses are not from loss of use of the Covered Property.................... 21

PRAYER ...................................................................................................... 22

CERTIFICATE OF SERVICE ......................................................................... 23

4815-0804-3595.v1

TABLE OF AUTHORITIES

**Cases**

*Aetna Cas & Sur. Co. v. Yates*, 344 F.2d 939 (5th Cir. 1965) ................................. 16

*AGIP Petroleum Co., Inc. v. Gulf Island Fabrication, Inc.*, No. 00-20487, 2001
WL 1692481, at *6 (5th Cir. 2001) ..................................................................... 21

*Alton Ochsner Medical Foundation v. Allendale Mut. Ins. Co.*, 219 F.3d 501 (5th
Cir. 2000) ........................................................................................ 15, 16, 18, 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................. 7

*Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738 (Tex. 1998) ......................... 8

*Barnard Pipeline, Inc. v. Travelers Property Cas. Co. of America,* 3 F.Supp.3d 865
(D. Mont. 2014) .......................................................................................... 12, 14

*Barnett v. Aetna Life Ins. Co.*, 907 S.W.2d 663 (Tex. 1987) ......................... 8, 9, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................ 7

*CenterPoint Energy Inc. v. Assoc. Electric & Gas Ins. Serv's Ltd.*, No. 09-2107,
2010 WL 11468795 (S.D. Tex. 2010) ................................................................. 16

*Employers Cas. Co. v. Brown-McKee, Inc.*, 430 S.W.2d 21, 26-27 (Tex. App.—
Tyler 1968, writ ref'd n.r.e.) .............................................................................. 21

*Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006) ...................................... 14

*Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132 (Tex. 1994) .................................... 8

*Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 583 (Tex.
App.—Houston [14th Dist.] 2013, pet. denied) .................................................. 21

*Geary v. Life Investors Ins. Co. of Am.*, 508 F.Supp.2d 518 (N.D. Tex. 2007) ...... 14

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex. 2007) ..................... 7

iii

4815-0804-3595.v1

*Goswick v. Employers' Cas. Co.*, 440 S.W.2d 287 (Tex. 1969)......................... 9, 19

*Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d
    365 (5th Cir. 1993) ....................................................................... 8, 9

*Klockner Stadler Hurter Ltd. v. Ins. Co. of State of Penn.*, 780 F.Supp. 148 (S.D.
    N.Y. 1991) .................................................................................... 13

*Lake Charles Harbor & Terminal Dist. v. Imperial Cas. & Indem. Co.*, 857 F.2d
    286 (5th Cir. 1988) ................................................................... 19, 20

*M.A. Mortenson Co. v. Indem. Ins. Co. of N. Am.*, No. Civ. 98-2319, 1999 WL
    33911358 (D. Minn. 1999) ............................................................ 13

*McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147 (Tex. 1983) ............ 7

*Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995)............ 8

*Nat'l Union Fire Ins. Co. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552
    (Tex. 1991)................................................................................. 9 , 19

*New Orleans Assets, L.L.C. v. Carl E. Woodward, L.L.C.*, No. Civ.A. 01-2171,
    2002 WL 32121256 (E.D. La. 2002) .............................................. 15

*Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.*, 336 F.3d 410
    (5th Cir. 2003)................................................................................. 7

*SpawGlass Const. Corp. v. City of Houston*, 974 S.W.2d 876 (Tex. App.—Houston
    [14th Dist.] 1998, pet. denied)........................................................ 14

*TMW Enterprises, Inc. v. Fed. Ins. Co.*, 619 F.3d 574 (6th Cir. 2010) ................. 15

*U.S. Industries, Inc. v. Aetna Cas. & Sur. Co.*, 690 F.2d 459 (5th Cir. 1982)........ 16

*Utica Natl. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198 (Tex. 2004) ... 9, 19

*Williams v. Cimarron Ins. Co.*, 406 S.W.2d 173 (Tex. 1966) ................................ 14

## Other Authorities

WEBSTER'S THIRD NEW INT'L DICTIONARY (1986)................................................ 11

## Rules

FED. R. CIV. P. 56(a)................................................................................................ 7

4815-0804-3595.v1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EMS USA, INC.                              §
                                           §
v.                                         §          CASE NO. 4:16-CV-01443
                                           §
THE TRAVELERS LLOYDS                       §
INSURANCE COMPANY                          §

**PLAINTIFF EMS USA, INC.'S RESPONSE TO TRAVELERS' SECOND
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff EMS USA, Inc. ("EMS" or "Plaintiff") and files this

Response to Defendant Travelers Lloyds Insurance Company's ("Defendant" or

"Travelers") Second Motion for Summary Judgment [Doc. 30] ("Motion"), and in

support thereof states as follows:

INTRODUCTION

1.      This is an action by EMS against Travelers to compel Travelers to

fulfill its contractual obligation to provide coverage pursuant to a policy that

Travelers sold to EMS. EMS purchased this policy to provide builder's risk

insurance for the natural gas pipeline that EMS constructed in Jefferson County,

Texas (the "Project") under a construction agreement with Martin Operating

Partnership, L.P. ("Martin"). In exchange, EMS believed that Travelers would

insure the property during construction of the pipeline. After EMS suffered

1

property damage during the construction, it presented a claim to Travelers. Travelers rejected the claim based on its own interpretation of the policy.

2.     Travelers would like to obtain a summary judgment in order to prevent EMS from receiving the benefits of the policy that EMS is entitled to receive. EMS files this Response in opposition to Travelers' Second Motion for Summary Judgment on the issue of coverage. [Doc. 30]. Travelers inaccurately suggests (1) that the pilot bore hole was not Covered Property under the Policy and (2) that EMS' losses are precluded by the mechanical breakdown exclusion, the faulty workmanship exclusion, the defective materials exclusion, and the loss of use exclusion. This selective reading of the policy ignores that the pilot bore hole was a temporary structure covered by the Policy, that the mechanical breakdown exclusion is inapplicable, that EMS' losses meet the resulting loss exception under the mechanical breakdown, faulty workmanship and defective materials exclusions, and that EMS' losses do no result from a loss of use of the Project.

### BRIEF SUMMARY OF RESPONSE

3.     Travelers' Second Motion for Summary Judgment should be denied for the following reasons:

   a.  The hole that was drilled to contain the natural gas pipeline was a temporary structure at the time the damage occurred and is therefore "Covered Property" under the policy.

b. Travelers fails to cite a single opinion to support its contention that EMS' position with regard to the temporary structure is "wholly inapposite to Texas law."

c. Travelers' broad interpretation of "land" is unsupported by the provisions of the Policy or by case law.

d. EMS' losses are covered by the resulting loss exception to the Mechanical Breakdown, Faulty Workmanship and Defective Materials exclusions to the policy.

e. Alternatively, the Mechanical Breakdown exclusion is inapplicable to the facts of this case.

f. EMS' losses are not a result from loss of use of the original Project.

## EVIDENCE

Exhibit 1:    Plaintiff's First Amended Complaint;

Exhibit 2:    Travelers Builders Risk Policy, Policy No. QT-660-8070X278-TLC-15;

Exhibit 3:    Master Construction Agreement between Martin and EMS, Agreement No.: MMP-0100;

Exhibit 4:    Plaintiff's Supplemental Answers to Defendant's Interrogatories;

Exhibit 5:    Deposition of Ron Wochner dated March 10, 2017, Division President of EMS USA, Inc.;

Exhibit 6:    Deposition of Alexander J. Buehler dated April 12, 2017, Rule 30(b)(6) Corporate Representative of EMS USA, Inc.;

Exhibit 7:    Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment;

3

## FACTUAL OVERVIEW

4.      EMS constructs and commissions pipelines. In 2015, EMS contracted with Martin to construct a natural gas pipeline in Jefferson County, Texas. [Exh. 1 at ¶6].

5.      Prior to construction, EMS purchased a commercial builder's risk policy from Travelers (the "Policy") to insure and protect property during construction from September 1, 2015 to September 1, 2016. [Exh. 2, Travelers 000023]. As a rolling policy, the Policy covered all of EMS' jobs throughout the year so that EMS would not need to secure a new insurance policy for each job. [Exh. 2, Travelers 000006].

6.      Construction of the Project began on or about September 28, 2015, and was expected to take sixty-five (65) days to complete. [Exh. 3, EMS000301-305]. The pipeline was to be placed in service on December 1, 2015. [*Id.*]

7.      EMS subcontracted with Isaacks Directional Drilling Co. ("Isaacks") to provide horizontal directional drilling operations to construct and install the pipeline. [Exh. 4, EMS000123-125]. Isaacks was to perform three main activities: (1) drilling the pilot hole; (2) enlarging the pilot hole through reaming operations; and (3) pulling in the final pipeline. [Exh. 5, 14:18-16:25].

8.      Isaacks came on site on or about October 5, 2015 and began to drill the pilot bore hole. [Exh. 3, EMS00302]. After Isaacks completed the pilot hole,

4

Isaacks began reaming operations to widen the structure so that the larger end pipe would fit. [Exh. 5, 16:9-11, 27:5-13].

9.      The reaming process requires entering the pilot hole with a cutting tool known as a reamer. [Exh. 5, 27:21-28:3]. The reamer is connected to a guide wire that directs the drill bit of the reaming tool. [*Id.*, 14:18-15:24]. The guide wire is encased within a "drill pipe," also known as a "drill string." [*Id.*, 30:9-17].

10.      On or about November 13, 2015, while Isaacks was conducting reaming operations, the guide wire within the drill string broke. [Exh. 5, 15:21-25, 24:21-25:11]. Repair of the guide wire delayed drilling operations and restricted the flow of drilling mud. [Exh. 5, 28:21-29:1]. Isaacks had reamed approximately 1,450 feet of the hole at this point. [*Id.*, 28:15-20]. Isaacks removed the pipe on one end so that it could remove the broken wire and resume reaming operations. [*Id.*, 27:19-28:8]. After removing the broken wire, Isaacks reamed an additional 450 feet before the reaming tool and drill string became completely stuck, preventing the completion of the reaming operation. [*Id.*, 28:13-20, 29:21-31:3].

11.      In an attempt to salvage the pipeline structure, EMS hired two separate downhole specialists (Warrior/IPS and Weatherford) to retrieve the pipe and unblock the hole. [Exh. 5, 32:14-33:15; Exh. 6, 13:17-22]. Attempts to remove the reaming tool and pipe were unsuccessful. [Exh. 5, 32:14-33:15]. The hole was damaged beyond repair and ultimately declared a total loss. [*Id.*]

5

12.     In order to deliver Martin a project that was comparable to the original Project, EMS was forced to start over and build a new pipeline structure. [Exh. 5, 36:5-19; Exh. 6, 28:3-8]. Eventually, a new location for the pipeline structure was discovered and EMS hired Michels Corporation ("Michels") to begin drilling a new pilot hole. [*Id.*].

13.     The damage sustained by EMS includes loss of the pipeline structure, the cost of two different downhole specialists to attempt to unblock the hole, and the cost of hiring a new subcontractor to drill a secondary pipeline structure 20 feet below the blocked structure. [Exh. 1].

14.     At all times pertinent to the November 2015 incident, EMS' Builder's Risk Policy with Travelers was in full force and effect. [Exh. 2]. EMS purchased this Policy to protect itself from the very loss it suffered when constructing the pipeline: work product, time, and expense. *Id.* EMS promptly filed three proofs of claim under the Policy for the Loss. [Exh. 1, p.2]. Travelers has wrongfully denied the proofs of claim and refused to provide coverage as contractually required. [Exh. 7]. EMS is entitled to recover the sum of Two Million Seven Hundred Twelve Thousand Nine Hundred Fifty Eight and 64/100 Dollars ($2,712,958.64) from Travelers under the terms of the Policy [Exh. 1, p. 5].

4815-0804-3595.v1

## STANDARDS OF REVIEW

### A. Motion for Summary Judgment

15.    Summary judgment may only be granted if the moving party has demonstrated that there is no genuine issue of material fact and that the moving party is therefore entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual issue is material if its resolution could affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue exists if reasonable factfinders could arrive at different conclusions based on the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755-56 (Tex. 2007). In deciding whether a factual issue exists, all facts and inferences are construed in a light that is most favorable to the nonmoving party. *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.*, 336 F.3d 410, 412 (5th Cir. 2003).

16.    Travelers is not entitled to summary judgment if a fact issue is created on the two elements ("covered property" and "covered cause of loss") on which Travelers alleges there is no genuine issue of material fact. *See McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex. 1983)("…the moving party must establish that as a matter of law there are no genuine issues of fact.").

7

**B. Interpretation of Insurance Policies in Texas.**

    **i.    The builders risk insurance policy is considered as a whole.**

    17.    In Texas, insurance policies are subject to the same rules of interpretation and construction as contracts. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). The words of a policy are usually to be given their plain, ordinary and generally accepted meaning, unless the policy indicates that the contractual terms have been used differently. *Gulf Chem.*, 1 F.3d at 369.

    18.    The primary concern of a court is to give effect to the parties' intent by considering the contract as a whole. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). The entire contract must be read together – all sentences, words, and punctuation marks – in an effort to give meaning to each provision. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998).

    **ii.    Ambiguity is resolved in favor of EMS.**

    19.    The meaning and scope of a provision may be ambiguous even if the language is definite. *Barnett v. Aetna Life Ins. Co.*, 907 S.W.2d 663, 665-66 (Tex. 1987). If a policy provision is susceptible to more than one reasonable interpretation, any ambiguity is resolved *liberally* in favor of the insured. *Id.* at 666

(emphasis added); *Nat'l Union Fire Ins. Co. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991).

### iii. Limitations on coverage are even more liberally resolved in favor of EMS.

20.     Interpretations of exceptions and limitations on policy coverage require an even more rigorous construction of the provision. *Barnett*, 907 S.W.2d at 666; *Gulf Chem.*, 1 F.3d at 369. Since the "objective of an insurance policy is to insure," a court must favor the construction of an exception or limitation provision proposed by the insured so long as the construction is *not unreasonable*, even if the construction proposed by the insurer is more reasonable or accurate. *Id.* (emphasis added); *Goswick v. Employers' Cas. Co.*, 440 S.W.2d 287, 289 (Tex. 1969); *Utica Natl. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004).

### ARGUMENT AND AUTHORITIES

21.     In its Second Motion for Summary Judgment, Travelers argues (1) that the hole constructed by EMS should not be considered Covered Property and (2) that the cause of loss is not covered under the Policy. [Doc. 30, pp. 1-2]. Travelers alleges that since the pilot bore hole was drilled into the land, then the pilot bore hole falls under the land exclusion to Covered Property [Exh. 2, Travelers 000023]. However, as explained below, the pilot bore hole is correctly considered a temporary structure.

9

22.     Travelers also alleges that the Policy excludes coverage for mechanical breakdowns, faulty workmanship, and defective materials. [Doc. 30, pp. 1-2]. However, the losses that EMS suffered were a resulting loss of mechanical breakdowns, faulty workmanship, and defective materials; the Policy contains a resulting loss exception to these exclusions that provides Coverage when an excluded cause of loss ultimately results in a covered cause of loss. [Exh. 2, Travelers 000033]. Since the mechanical breakdown, faulty workmanship and defective materials ultimately resulted in direct physical loss or damage to the covered property, which is a covered cause of loss under the Policy, then the resulting loss exception applies.

23.     Travelers further alleges that the Policy excludes coverage for consequential loss of use of the Project. However, EMS is not alleging damages that resulted from a loss of use. [Exh. 1, pp. 2-3].

**A. The pilot hole is Covered Property under the Policy.**

24.     Travelers alleges that the pilot hole is not Covered Property under the Policy because "land and land values do not fall under the definition of Covered Property." [Doc. 30, p. 11]. However, the land exclusion is (1) inapplicable to temporary structures and (2) there is a genuine issue of material fact as to whether the pilot bore hole is a temporary structure.

10

i.    **The pilot bore hole is a temporary structure.**

25.    The Policy provides Coverage for property owned by the insured or for which the insured is legally liable. [Exh. 2, Travelers 000023]. The Policy further covers Temporary Works and more specifically, "temporary buildings or structures incidental in completion of the project…" [*Id.*]. "Completion of the project" is defined in the policy to include "site preparation (including demolition of existing buildings or structures), fabrication, assembly, installation, erection, alteration, renovation and similar construction activities." [Exh. 2, Travelers 00023]. The Policy does not define building, structure, land, or land use. [Exh. 2, Travelers 000040-000041]. However, under its plain meaning, a "structure" is defined as, for example, "something constructed or built." WEBSTER'S THIRD NEW INT'L DICTIONARY (1986).

26.    EMS was hired by Martin to use horizontal directional drilling to install a natural gas pipeline underground. [Exh. 3, EMS000257]. The pilot hole was drilled to provide a structure to contain and support the natural gas pipeline. [*See* Exh. 5, 17:1-3, 27:8-11; Exh. 6, 25:5-12]. The drilling of a pilot bore hole *is* considered site preparation, as Martin determined that "certain areas [of the pipeline] will be installed Horizontal Directional Drilling." [Exh. 3, EMS 000271]. Alternatively, the drilling of a pilot bore hole is also considered land alteration,

11

since horizontal directional drilling "install[s] buried utilities…" [Exh. 3, EMS 000280].

27.     In *Barnard Pipeline, Inc. v. Travelers Prop. Cas. Co. of Am.*, Barnard had a builders risk insurance policy to insure a pipeline expansion project along a right of way in Utah. 3 F.Supp.3d 865, 868 (D. Mont. 2014). The first phase of the project involved building roads to access the right of way and leveling and grading the right of way. *Id.* After torrential rains washed out the access roads and damaged the work space on the right of way, Barnard filed a claim with Travelers. *Id.* Travelers claimed that the right of way was "land" which was excluded from Covered Property under the builders risk policy. *Id.* at 868-869.

28.     The Court in *Barnard Pipeline* concluded that the right of way was a temporary structure because (1) the cost of the work done to the right of way was included in the calculations for the insurance limits and premiums, (2) the natural state of the right of way was altered and "served a critical function in completing the Project," and (3) that the right of way served as a "work platform" for the pipeline expansion project. Since the right of way had been "cleared, excavated, and leveled," the Court ultimately held that it constituted a structure covered by the Policy. *Id.* at 871-872.

29.     As in *Barnard Pipeline,* the cost of the horizontal directional drilling was included in the project calculations that EMS presented to Martin. [Exh. 3,

EMS 000290-0000294, 000298]. The drilling of the pilot bore hole was a necessary incidental step to installing the natural gas pipeline and completing the Project. [Exh. 3, EMS 000271-000272, 000304-000305].

30.     In *Klockner Stadler Hurter Ltd. v. Ins. Co. of State of Penn.*, Klockner Stadler Hurter ("KSH") was hired to construct a pulp and paper mill in Malaysia. 780 F.Supp. 148, 150-51 (S.D. N.Y. 1991). After a landslide damaged an excavation site, KSH filed a claim with its insurer, Insurance Company of Pennsylvania ("ICP"). *Id.* ICP responded that the excavation site was "exclusively and entirely" land and therefore fell under the land exclusion to the policy. *Id.* at 157-158. KSH argued that the excavation site was not just soil, but was "work" that was covered under the policy. *Id.* at 158.

31.     The Court found that since the parties differed on whether the definition of "land" was intended to refer only to land in its natural state or whether the definition also included work product comprised of soil, there was a genuine issue of material fact on the land exclusion of the Policy. *Id.*; *M.A. Mortenson Co. v. Indem. Ins. Co. of N. Am.*, No. Civ. 98-2319, 1999 WL 33911358, at *7 (D. Minn. 1999)(holding that "land" can only be interpreted to mean "land in its natural setting and not a constructed work…" and therefore, the land exclusion is ambiguous and favors coverage).

4815-0804-3595.v1

32.     At Martin's request, EMS used horizontal directional drilling to install several portions of the natural gas pipeline. [Exh. 3, EMS 000271-000272]. Horizontal directional drilling is an excavation method, which in turn, would make the pilot bore hole an excavation site like the one at issue in *Klockner*. [Exh. 3, EMS000280].

**ii.     EMS' position is consistent with Texas law.**

33.     In an attempt to negate EMS' position that the pilot bore hole is Covered Property, Travelers states that "Montana law…is wholly inapposite to Texas law that controls the issues at hand…" and directs the Court to *Fiess v. State Farm Lloyds* to support this proposition. [Doc. 30, p. 11].

34.     First, *Fiess v. State Farm Lloyds* does not address land exclusions to insurance coverage. 202 S.W.3d 744, 746 (Tex. 2006). Second, *Fiess* and *Barnard Pipeline* agree on the standards used to interpret ambiguity in insurance policies. *Fiess*, 202 S.W.3d at 746; *Barnard Pipeline*, 3 F.Supp.3d at 870.

35.     Furthermore, Travelers fails to cite any Texas or 5th Circuit case that disagrees with the holding in *Barnard Pipeline*, *KSH*, or *M.A. Mortenson*. [Doc. 30, pp. 11-12]. In the absence of binding precedent, this Court may look to other states and circuits for persuasive discussion of the pertinent issues. *SpawGlass Const. Corp. v. City of Houston*, 974 S.W.2d 876, 881 (Tex. App.—Houston [14th Dist.] 1998, pet. denied), citing *Williams v. Cimarron Ins. Co.*, 406 S.W.2d 173,

14

175 (Tex. 1966); *Geary v. Life Investors Ins. Co. of Am.*, 508 F.Supp.2d 518, 522 (N.D. Tex. 2007)(when there is no binding authority to interpret an insurance provision, the Court may look to other jurisdictions for guidance on the provision's interpretation)(interpreting Texas law).

## B. EMS' losses fall under the resulting loss exceptions to the faulty workmanship, defective materials, and mechanical breakdown policy exclusions.

36.     Travelers also alleges in its Second Motion for Summary Judgment that EMS' losses are excluded from coverage under the mechanical breakdown, faulty workmanship, and defective materials exclusions. [Doc. 30, pp. 1-2]. However, these exclusions each contain "resulting loss" or "ensuing loss" exceptions. [Exh. 2, Travelers 000033, Travelers 000052]. *See TMW Enterprises, Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 576-77 (6th Cir. 2010)(explaining how a resulting loss exception operates within a policy); *see also New Orleans Assets, L.L.C. v. Carl E. Woodward, L.L.C.*, No. Civ.A. 01-2171, 2002 WL 32121256, at *3 (E.D. La. 2002).

37.     The resulting loss breaks the "but-for" causation in coverage exclusions, allowing for coverage when "the reasonable damage expected to be caused…leads to another peril that causes damage beyond that normally expected." *TMW*, 619 F.3d at 578.  When, as here, the ensuing damage is beyond what could be expected by faulty workmanship, defective materials, or a mechanical

breakdown, then the ensuing loss exception applies and the insured has coverage under the Policy. *See id.*; *Alton Ochsner Medical Foundation v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 506 (5th Cir. 2000)(noting that in order to trigger the ensuing loss exception, an event "extraneous" to the construction process must cause the loss and cause damage that is different in kind, not merely in degree, from the excluded damage).

38.    The question becomes whether the insured is seeking damages to *correct* the faulty workmanship or rather whether the insured suffered direct physical damages that *resulted* from the faulty workmanship. *CenterPoint Energy Inc. v. Associated Electric & Gas Ins. Serv's Ltd.*, No. 09-2107, 2010 WL 11468795, at *6 (S.D. Tex. 2010)(emphasis added); *Aetna Cas & Sur. Co. v. Yates*, 344 F.2d 939, 941 (5th Cir. 1965)(the excluded cause of loss and the covered ensuing loss must be separable events); *U.S. Industries, Inc. v. Aetna Cas. & Sur. Co.*, 690 F.2d 459, 460 (5th Cir. 1982).

39.    EMS is not seeking damages for the faulty workmanship that required replacing the broken guide wire. [Exh. 6, 24:15-25:4]. The guide wire that broke was replaced. [Exh. 5, 26:11-17, 27:11-28:8]. However, while the guide wire was being replaced, the flow of drilling mud was impeded [Exh. 5, 28:21-29:1]. Once the drilling mud ceased to flow, the drill string became stuck and remains underground to this day, causing "the direct physical loss of or damage" to the

16

pilot bore hole, which is a covered cause of loss under the Policy.[1] [Exh. 5, 30:17-31:3; Exh. 2, Travelers 000023]. As a result of the direct physical damage to the pilot bore hole, EMS was forced to construct an entirely new pipeline underneath the original Project. [Exh. 1].

40.    EMS is not seeking damages for defective materials or for replacing the broken guide wire. [Exh. 6, 24:15-24:20]. The guide wire that broke was replaced. [Exh. 5, 26:11-17, 27:11-28:8]. However, while the guide wire was being replaced, the flow of drilling mud was impeded [Exh. 5, 28:21-29:1]. Once the drilling mud ceased to flow, the drill string became stuck and remains underground to this day, causing "the direct physical loss of or damage" to the pilot bore hole, which is a covered cause of loss under the Policy.[2] [Exh. 5, 30:17-31:3; Exh. 2, Travelers 000023].

41.    EMS is not seeking damages for mechanical breakdown or for replacing the damaged guide wire. [Exh. 6, 24:15-24:20]. The guide wire that broke was replaced. [Exh. 5, 26:11-17, 27:11-28:8]. However, while the guide wire was being replaced, the flow of drilling mud was impeded [Exh. 5, 28:21-29:1]. Once the drilling mud ceased to flow, the drill string became stuck and remains underground to this day, causing "the direct physical loss of or damage" to the

---

[1] EMS filed a Response to Travelers' Motion for Summary Judgment and Cross-Motion for Summary Judgment explaining why the direct physical loss was a Covered Cause of Loss under the Policy. [Doc. 27].
[2] EMS filed a Response to Travelers' Motion for Summary Judgment and Cross-Motion for Summary Judgment explaining why the direct physical loss was a Covered Cause of Loss under the Policy. [Doc. 27].

4815-0804-3595.v1

pilot bore hole, which is a covered cause of loss under the Policy.[3] [Exh. 5, 30:17-31:3; Exh. 2, Travelers 000023].

42.       In *Alton Ochsner Medical Foundation*, the plaintiff purchased an all-risk property insurance policy to cover several properties, including the construction of a five-story tower. 219 F.3d at 502. Prior to completion of the tower, the foundation began to crack. *Id.* at 503. The plaintiff temporarily repaired the cracks in the foundation but ultimately needed to replace the entire foundation. *Id.* The insurer denied coverage on the basis that the policy contained a faulty workmanship exclusion and a cracking exclusion. *Id.* The plaintiff claimed that the loss is a resulting loss exception to the mechanical breakdown exclusion. *Id.* at 505. The Court clarified their holding in *Alton Ochsner*, stating "[i]t is the *quality of the product* which is excluded from coverage, and not damage *to* the product caused by negligence during the construction process." *Id.* at 506. So long as the loss is not an inherent defect in the insured property and the damage is caused by an extraneous event, then the resulting loss exception applies. *Id.*

43.       Unlike the plaintiff in *Alton Ochsner*, EMS is not claiming losses for repairing the defective original pilot hole or trying to "make good" the faulty workmanship. [Exh. 1]. EMS is not attempting to recover the value of the Original Project. [*Id.*]. EMS is trying to recover physical *damage to* the hole caused by

---

[3] EMS filed a Response to Travelers' Motion for Summary Judgment and Cross-Motion for Summary Judgment explaining why the direct physical loss was a Covered Cause of Loss under the Policy. [Doc. 27].

negligence during the construction process. *See Alton v. Ochsner*, 219 F.3d at 506. This direct physical damage to the pilot bore hole *is* a covered cause of loss under the Policy. [Exh. 2, Travelers 00023].

**C. The breaking of the guide wire was not a mechanical breakdown.**

44.     The Policy excludes coverage for "a mechanical breakdown, including rupture or bursting caused by centrifugal force…" [Exh. 2, Travelers 000052]. However, the Policy does not define mechanical breakdown within the Coverage Exclusions, within the Breakdown Exclusions or within the Policy definitions. [Exh. 2, Travelers 000031-33, 000040-000041, 000052].

45.     If a policy provision is susceptible to more than one reasonable interpretation, any ambiguity is resolved *liberally* in favor of the insured. *Barnett v. Aetna* at 666 (emphasis added); *Nat'l Union Fire Ins. Co. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991). Since the "objective of an insurance policy is to insure," a court must favor the construction of an exception or limitation provision proposed by the insured so long as the construction is *not unreasonable*, even if the construction proposed by the insurer is more reasonable or accurate. *Hudson*, 811 S.W.2d at 555 (emphasis added); *Goswick,* 440 S.W.2d at, 289 (Tex. 1969); *Utica Natl. Ins. Co. of Tex.*, 141 S.W.3d 198, 202 (Tex. 2004).

46.     In *Lake Charles Harbor & Terminal Dist. v. Imperial Cas & Indem. Co.*, a worn-out cable snapped and a heavy shuttle crashed into the interior of a

19

shiploader. 857 F.2d 286, 287 (5th Cir. 1988). The plaintiff's inland marine policy contained a mechanical breakdown exclusion to coverage accompanied by a resulting loss exception. *Id.* The insurer refused coverage under the mechanical breakdown exclusion, so the court's primary inquiry was the meaning of "mechanical exclusion." *Id.* The court began by characterizing the provision as "an exclusion whose words, read literally, are meaningless" and agreed with the lower court that the mechanical breakdown exclusion is intended to prevent the insurer from becoming a "warrantor or service contractor of the equipment of the insured." *Id.* at 287-88. The mechanical breakdown exclusion precludes coverage for "routine and minor maintenance." *Id.*

47.    The guide wire that broke in the Project was not routine maintenance: two downhole specialists were unable to fix the consequences of the broken guide wire. [Exh. 4, p.9]. Furthermore, the broken guidewire proximately caused the lodging of the drill string which caused physical loss or damage to the pilot bore hole and was therefore not a minor breakdown. [Exh. 4, p. 9].

**D. EMS' losses are not from loss of use of the Covered Property.**

48.     Although EMS did suffer loss of use of the pilot bore hole as a consequence of the direct physical damage to the property, EMS is not claiming any losses that arise from a loss of use. *See AGIP Petroleum Co., Inc. v. Gulf Island Fabrication, Inc.*, No. 00-20487, 2001 WL 1692481, at *6 (5th Cir. 2001)(addressing loss of use exclusions to insurance coverage). EMS was never able to use the pilot bore hole to install the natural gas pipeline.

49.     Furthermore, under Texas law, "loss of use" is an element of physical loss and/or damage. *AGIP Petroleum*, 2001 WL 1692481, at *5; *Employers Cas. Co. v. Brown-McKee, Inc.*, 430 S.W.2d 21, 26-27 (Tex. App.—Tyler 1968, writ ref'd n.r.e.)(loss of use is an element of property damage). So, to the extent that the Policy does provide coverage for "direct physical damage or loss" to the Covered Property, of which loss of use is an element, then the loss of use provision directly conflicts with the coverage provision. [Exh. 2, Travelers 000031-000033].

50.     When a policy contains conflicting provisions, the Court should attempt to harmonize both provisions to effectuate the agreement as a whole if possible. *Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). If the two provisions are completely inapposite, the Court must construe the interpretation that favors coverage for the insured. *Id.* Since EMS' builders risk insurance policy contains

21

two provisions that squarely oppose each other, this Court should ignore the "loss of use" provision that would be unfavorable to providing coverage to the insured.

## PRAYER

WHEREFORE PREMISES CONSIDERED, EMS USA, Inc. requests that Travelers' Second Motion for Summary Judgment be denied and that EMS be afforded such other and further legal and equitable relief to which it may show itself justly entitled.

Respectfully submitted,
COATS | ROSE, P.C.

By: /s/ David Lynch
David S. Lynch
Texas Bar No. 12725825
dlynch@coatsrose.com
Daniel F. Shank
Texas Bar No. 18090400
dshank@coatsrose.com
Teia M. Kelly
Texas Bar No. 24074752
tkelly@coatsrose.com
9 Greenway Plaza, Suite 1100
Houston, Texas 77046
Telephone: (713) 651-0111
Facsimile: (713 651-0220

ATTORNEYS FOR PLAINTIFF
EMS USA, INC.

22

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was delivered to all counsel of record, listed below, in accordance with the Federal Rules of Civil Procedure on the 10th day of July, 2017.

> Greg C. Wilkins
> gcw@obt.com
> Christopher A. McKinney
> cam@obt.com
> Orgain Bell & Tucker, LLP
> Post Office Box 1751
> Beaumont, Texas  77704-1751

/s/ David S. Lynch_____
David S. Lynch

23

4815-0804-3595.v1