Case 4:16-cv-01443 Document 35 Filed on 02/28/18 in TXSD Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
February 28, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EMS USA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-1443 |
| | § | |
| THE TRAVELERS LLOYDS INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant The Travelers Lloyds Insurance Company's ("Defendant") Motion for Summary Judgment (Doc. 27), Defendant's Second Motion for Summary Judgment (Doc. 30), and Plaintiff EMS USA, Inc.'s ("Plaintiff") Motion for Summary Judgment (Doc. 28). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED IN PART AND DENIED IN PART** and Defendant's motions be **GRANTED IN PART AND DENIED IN PART.**

**I. Case Background**

Plaintiffs originally filed this insurance action against its insurer for declaratory relief and damages for breach of the insurance contract and violations of the Texas Insurance Code.

**A. The Insurance Policy**

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 5, Ord. Dated May 25, 2016.

Plaintiff purchased a Builders' Risk Policy (the "Policy") from Defendant to cover the period from September 1, 2015, to September 1, 2016.[2] Plaintiff was the insured entity under the Policy.[3] The coverage on the Policy was divided into two groups.[4] Group one included "covered property consisting of frame and joisted masonry construction," with a limit of liability of $1,000,000.[5] Group two included "covered property consisting of non-combustible or better construction," with a limit of liability of $15,000,000.[6] Additionally, the Policy contained coverage for property in transit or temporary storage, as well as extended and additional coverages for other potential construction and weather issues.[7]

The Policy provided, in relevant part, that:

> **A.   COVERAGE**
> We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.
>
> **1.   Covered Property**
> Covered Property, as used in this Coverage Form, means the following types of property you own or for which you are legally liable,

---

[2] See Doc. 27-1, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Ins. Policy pp. 2-3, 11. For this exhibit, the court cites to the docket page number rather than the internal document page number.

[3] See p. 3.

[4] See id. p. 11.

[5] Id. pp. 11-12.

[6] Id.

[7] See id. pp. 14-19.

the value of which is included in the estimated "total project value" shown in the Declarations:

**a.   Permanent Works**
Materials, equipment, machinery, supplies and property of a similar nature that will become a permanent part of the project described in the Declarations during completion of such project or that will be used or expended in the completion of such project.

Completion of the project includes site preparation (including demolition of existing buildings or structures), fabrication, assembly, installation, erection, alteration, renovation and similar construction activities.

**b.   Temporary Works**
Cofferdams, construction forms, cribbing, falsework, hoarding, scaffolds, fencing, signs, office trailers (and their "contents") and similar temporary buildings or structures incidental to completion of the project described in the Declarations.

We will cover such property:

**(1)** At the job site described in the Declarations; and . . .

2.   **Property and Costs Not Covered**

Covered Property does not include:

. . .

**c.**   Land and land values and the value of cut, fill and backfill materials that existed at the job site prior to the date construction commenced.

But this restriction does not apply to:

>> **(1)** The value of cut, fill and backfill materials purchased for use in the completion of the project to the extent the value of such property is included in the estimated "total project value" shown in the Declarations.
>
> **(2)** Labor, material and equipment charges incurred to move, remove, place or otherwise handle cut, fill and backfill materials to the extent such costs are included in the estimated "total project value" shown in the Declarations.

. . .

> **11.** **"Specified causes of loss"** means fire; lightning; explosion; windstorm or hail; smoke (including the emission of puff back of smoke, soot fumes or vapors from a boiler, furnace or related equipment); aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects as limited below; weight of snow, ice or sleet; "water damage", all only as otherwise insured against in this Coverage Part.[8]

**B.   The Underlying Facts**

Plaintiff was hired to build a natural gas pipeline for Martin Operating Partnership, L.L.P. ("Martin") in Jefferson County, Texas.[9]   To complete the horizontal directional drilling operations, Plaintiff subcontracted with Isaacks Directional Drilling Company ("Isaacks").[10]

---

[8]   Id. pp. 24, 42.

[9]   See Doc. 27-2, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Am. Compl. p. 2.

[10]   See id.

4

On or after October 5, 2015, Isaacks commenced work on the site, including drilling the pilot hole.[11] Isaacks then began reaming operations in order to widen the pilot hole for the eventual pipeline.[12] To undergo the reaming operations, a drill string enclosing the guide wire was attached to the reamer and directed the drill bit.[13]

On November 13, 2015, after Isaacks had reamed about 1,450 feet, the guide wire broke and prevented the flow of mud necessary for the reaming process.[14] After Isaacks took out one end of pipeline to remove the broken guide wire, it continued to ream for another 450 feet until the reamer and drill string became lodged in the pilot hole.[15] Ron Wochner, an employee of Plaintiff, opined that this occurred because drilling mud was not flowing while the guide wire was being fixed.[16] Two companies were hired by Plaintiff to salvage the pilot hole, but neither was able to fix the situation and the hole was abandoned.[17] A new subcontractor,

---

[11] See Doc. 28-3, Ex. C to Pl.'s Resp. & Mot. for Summ. J., The Beaumont Natural Gasoline Pipeline Project p. 2; Doc. 31-9, Ex. 5 to Pl.'s Resp. to Def.'s 2ᵈ Mot. for Summ. J., Dep. of Ron Wochner p. 16.

[12] See Doc. 31-9, Ex. 5 to Pl.'s Resp. to Def.'s 2ᵈ Mot. for Summ. J., Dep. of Ron Wochner p. 16.

[13] See id. pp. 14-17, 20-21.

[14] See id. pp. 15, 24-30.

[15] See id. pp. 28-29.

[16] See id. pp. 28-30.

[17] See id. pp. 31-33; Doc. 32-6, Ex. 6 to Pl.'s Resp. to Def.'s 2ᵈ Mot. for Summ. J., Dep. of Alexander J. Buehler p. 3.

Michels Corporation ("Michels") was hired by Plaintiff to recommence the project by drilling a new pilot hole deeper underground.[18]

### C. The History of this Lawsuit

On May 2, 2016, Plaintiff filed this action in the 80th District Court of Harris County, Texas.[19] Defendant removed to this court on May 24, 2016, on the basis of diversity jurisdiction.[20] Plaintiff filed an amended complaint with leave of court on January 12, 2017.[21]

On April 28, 2017, Defendant filed its motion for summary judgment, contending that Plaintiff's claim was not covered under the Policy.[22] Plaintiff responded and filed a cross-motion for summary judgment on May 17, 2017.[23] Defendant filed a second motion for summary judgment on June 19, 2017, contending that various exclusions barred coverage under the Policy.[24]

## II. Summary Judgment Standard

---

[18] See Doc. 31-9, Ex. 5 to Pl.'s Resp. to Def.'s 2d Mot. for Summ. J., Dep. of Ron Wochner p. 36; Doc. 31-10, Ex. 6 to Pl.'s Resp. to Def.'s 2d Mot. for Summ. J., Dep. of Alexander J. Buehler p. 28.

[19] See Doc. 1, Def.'s Not. of Removal; Doc. 1-3, Ex. C to Def.'s Not. of Removal, Pl.'s Orig. Pet.

[20] See Doc. 1, Def.'s Not. of Removal p. 2.

[21] See Doc. 20, Pl.'s Am. Compl.

[22] See Doc. 27, Def.'s Mot. for Summ. J.

[23] See Doc. 28, Pl.'s Resp. & Mot. for Summ. J.

[24] See Doc. 30, Def.'s 2d Mot. for Summ. J.

6

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

Cross-motions for summary judgment are considered separately under this rubric. See Shaw Constructors v. ICF Kaiser Eng'rs, 395 F.3d 533, 538-39 (5th Cir. 2004). Each movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, and the court views the evidence in favor of each nonmovant. See id.; Tidewater Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009)(quoting Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 499 (5th Cir. 2001)).

### III. Insurance Law

Under Texas law,[25] the insured generally bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage. See SWE Homes, LP v. Wellington Ins. Co., 436 S.W.3d 86, 90 (Tex. App.—Houston [14th Dist.] 2014, no pet.). If the insurer is successful, the burden shifts back to the insured to prove that an exception to the exclusion applies. Guar. Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998).

Insurance policies are subject to the rules of contract interpretation. State Farm Lloyds v. Page, 315 S.W.3d 525, 527 (Tex. 2010). In construing the terms of a written contract, the court's primary goal is always "to determine the contracting parties' intent through the policy's written language." Id. To this end, the court reads all parts of the contract as a whole and gives effect to each word, clause, and sentence so that no part of the agreement is rendered inoperative. Id. Courts construe terms in contracts to have their plain, ordinary meaning unless something in the contract itself indicates that the parties intended for them

---

[25] Texas law applies to this insurance dispute. See, e.g., Doc. 27, Def.'s Mot. for Summ. J. (citing Texas insurance law); Doc. 28, Pl.'s Resp. & Mot. for Summ. J. (same). Pursuant to the Texas Insurance Code, "[a]ny contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby . . . ." Tex. Ins. Code art. 21.42.

to have particular definitions.  Tanner v. Nationwide Mut. Fire Ins. Co., 289 S.W.3d 828, 831 (Tex. 2009).

When a contract as worded can be given "a definite or certain legal meaning," then it is unambiguous as a matter of law, and the court enforces it as written. WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc., 844 F.3d 473, 478 (5th Cir. 2016)(applying Texas law).  The court will not find an insurance contract ambiguous because it lacks clarity or because the parties disagree on its meaning. Id.; Page, 315 S.W.3d at 527.  "Instead, a contract is ambiguous 'only if it is subject to two or more reasonable interpretations after applying the pertinent canons of construction.'" WBCMT 2007 C33 OFFICE 9720, L.L.C., 844 F.3d at 478 (quoting McLane Foodservice, Inc. v. Table Rock Rests., L.L.C., 736 F.3d 375, 378 (5th Cir. 2013)).

### IV. Analysis

Defendant asserts that the pilot hole is land and did not sustain direct physical loss or damage, and is not covered property; Plaintiff argues that it is covered under the Policy. Defendant contends in its second motion for summary judgment that if the pilot hole is covered property, then one of the following exclusions applies: land, mechanical breakdown, faulty workmanship, defective materials, or consequential loss.  Plaintiff counters that even if one of the exclusions is applicable, then it is subject to the resulting loss or ensuing loss exception.

9

A. **Covered Property**

The parties dispute whether the pilot hole is covered property under the Policy. Defendant argues that the pilot hole is land and thus not covered, and Plaintiff asserts that the pilot hole was a structure, citing Barnard Pipeline, Inc. v. Travelers Prop. Cas. Co. of Am., 3 F. Supp.3d 865 (D. Mont. 2014).

In Barnard Pipeline, the insured prepared and excavated land to create a right-of-way to be "used as a route of travel for heavy equipment" and as a "working surface for constructing and installing the pipe;" through the excavation process, the goal was to "get a level, safe, and compacted soil surface on which to perform the next phase of work." 3 F. Supp.3d at 868. However, due to an large amounts of precipitation, the right-of-way was damaged. Id.

In determining whether the right-of-way was covered property, the court found that it became a "structure" due to the insured's work on the property. Id. at 873-74. As the Policy did not define "structure," the court looked to dictionary definitions which defined structure as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together" and "something built or constructed, as a building or dam." Id. at 872 (citing Black's Law Dictionary 1559 (9th Ed.); Webster's New World Dictionary 429 (4th Ed.)). Interpreting this definition broadly, the court reasoned that as the insured

"extensively changed the inert natural state of this land, through the use of heavy machinery," making it "artificial" and "free of vegetation, level, compact, and more useful for [the insured's] construction purposes," it became a structure. Id. Additionally, the insured used the right of way to perform its work and to transport machinery. Id. The court also looked to the fact that the policy generally covered the entire project. Id. at 873.

Defendant takes issue with Plaintiff's reliance on Barnard Pipeline, contending that Montana law is different than Texas law, in that Montana law mandates strict construction of the policy against the insurer. This court will not rely on the Montana court's finding that the right-of-way was a structure, but finds it helpful to look to the Montana court's approach of utilizing dictionary definitions to help determine the meaning of a word not defined in the policy. Texas law also endorses this approach of looking to dictionary definitions to discover the ordinary meaning of an undefined term in an insurance policy. See, e.g., Markel Ins. Co. v. Muzyka, 293 S.W.3d 380, 386-87 (Tex. App.–Fort Worth 2009, no pet.); Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc., 56 S.W.3d 313, 320 (Tex. App.–Houston [1st Dist.] 2001, pets. denied).

Webster's Dictionary defines structure as: "something (such as a building) that is constructed." Merriam-Webster Online

11

Dictionary.[26]  Oxford's definition is similar, stating that a structure is "[a] building or other object constructed from several parts."  Online Oxford Dictionary.[27]  "Construct" is defined as "[b]uild or make (something, typically a building, road, or machine)."  Online Oxford Dictionary.[28]  Looking at the facts of this case, the pilot hole was something created or made to house the eventual pipeline.  The pilot hole was to serve as the structure for the pipeline and was no longer merely "land" once it was drilled by Plaintiff's subcontractor.  Therefore, the court finds that the pilot hole can be considered a "structure" and therefore, it is covered property under the Policy.

**B. <u>Direct Physical Loss</u>**

Defendant asserts that the only damaged property was the guide wire, which was not covered property under the Policy, and that the hole itself suffered no physical damage.  Plaintiff contends that its direct physical loss or damage was caused by "a physical incident or series of incidents, rendering the pipeline structure physically incapable of performing its essential function intended on the Project–to house the pipeline and allow for transportation

---

[26] <u>See</u> <u>Structure</u>, Merriam-Webster Dictionary (Feb 2018), https://www.merriam-webster.com/dictionary/structure.

[27] <u>See</u> <u>Structure</u>, Oxford Dictionary, https://en.oxforddictionaries.com/definition/structure.

[28] <u>See</u> <u>Construct</u>, Oxford Dictionary, https://en.oxforddictionaries.com/definition/construct.

of petrochemicals."[29]

The Policy covers "direct physical loss of or damage to Covered Property."[30] This language is not specifically defined in the Policy. In interpreting the plain meaning of physical loss or damage, the Fifth Circuit has explained that, "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state." Trinity Indus., Inc. v. Ins. Co. of N. Am., 916 F.2d 267, 270-71 (5th Cir. 1990). Here, the pilot hole clearly went from an initial satisfactory state to an unsatisfactory state when the guide wire broke and the drill string became lodged in the hole.

Texas courts have distinguished between physical loss and direct physical loss, finding that direct physical loss requires the cause be "immediate" or "proximate," without an intervening cause, whereas "physical loss" includes all natural consequences of the named peril in the policy. de Laurentis v. United Servs. Auto. Ass'n, 162 S.W.3d 714, 723 (Tex. App.–Houston [14th Dist.], pets. denied)("Texas courts have determined that physical loss, as opposed to direct physical loss, includes the natural consequences of the named peril.")(citing Travelers Indem. Co. v. Jarrett, 369 S.W.2d 653, 655 (Tex. App.–Waco 1963, no writ)); see also Fed. Ins.

---

[29] See Doc. 28, Pl.'s Resp. & Mot. for Summ. J. pp. 17-18.

[30] See Doc. 27-1, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Ins. Policy p. 24.

Co. v. Bock, 382 S.W.2d 305, 307 (Tex. Civ. App.–Corpus Christi 1964, writ ref'd n.r.e.)("in a suit on a policy insuring for 'direct loss' caused by the named peril, a proper definition of proximate cause would be 'that cause which in a natural and continuous sepauence [sic] unbroken by any new and intervening cause, produces a loss, and without which the loss would not have occurred."); Allianz Cornhill Int'l v. Great Lakes Chem. Corp., No. H-04-1668, 2006 WL 778618, at **6-7 (S.D. Tex. 2006)(unpublished). With direct physical loss, courts have found that there is not the same requirement of foreseeability for insurance cases as in negligence cases.  Bock, 382 S.W.2d at 307 ("the term 'proximate cause' as applied in insurance cases has essentially the same meaning as it does in negligence cases, except that in insurance cases, the element of foreseeableness or anticipation of the injury as the result of the peril insured against is not required.").

The loss of the hole was directly caused by the drilling operations in this case.  Defendant focuses on the fact that the guide wire was damaged and contends the hole was undamaged. However, the pilot hole was clearly damaged as it was rendered unusable due to the fact that the drill string became lodged within and could no longer be used to house the pipeline.  Combining the definition of physical loss from Trinity with the requirement that it be "direct" as posited by Texas courts, the court finds that the pilot hole suffered direct physical loss or damage.

14

**C. Faulty Workmanship Exclusion**

As the court finds that there is coverage under the Policy, now it must turn to Defendant's arguments that one of the Policy's exclusions applies. In its second motion for summary judgment, Defendant contends that the faulty workmanship exclusion applies to bar coverage because the guide wire broke and the drill string became lodged within, rendering the pilot hole unusable. Plaintiff argues that it is not seeking to recover damages for the broken guide wire. To challenge this faulty workmanship exclusion, Plaintiff asserts that the resulting or ensuing loss exceptions apply because it is only "trying to recover physical *damage to* the hole caused by negligence during the construction process" and it is "not claiming losses for repairing the defective original pilot hole or trying to 'make good' the faulty workmanship."[31] Plaintiff claims that the ensuing loss occurred when the drill string became lodged following breakage of the guide wire.

This exclusion and the pertinent exceptions reads as follows:

**4.** We will not pay for loss or damage caused by or resulting from faulty, inadequate or defective:
. . .

    **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction;
. . .

If an excluded cause of loss listed in Paragraph 4.a.

---

[31] See Doc. 31, Pl.'s Resp. to Def.'s 2ᵈ Mot. for Summ. J. pp. 18-19 (emphasis in original).

15

>through 4.d. above, results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss. But we will not pay for:
>
>**(1)** Any cost of correcting or making good the fault, inadequacy or defect itself, including any cost incurred to tear down, tear out, repair or replace any part of any property to correct the fault, inadequacy or defect; or
>
>**(2)** Any resulting loss or damage to the property that has the fault, inadequacy or defect until the fault, inadequacy or defect is corrected.[32]

In Alton Ochsner Medical Foundation v. Allendale Mutual Insurance Co., 219 F.3d 501, 506 (5th Cir. 2000), the court explained that the faulty workmanship exclusion has been interpreted as "a defect in the way some part of the (insured property) is constructed." (quoting U.S. Indus., Inc. v. Aetna Cas. & Sur. Co., 690 F.2d 459, 462 (5th Cir. 1982)). The Fifth Circuit explained this further as, "[i]t is the *quality of the product* which is excluded from coverage, and not damage *to* the product caused by negligence during the construction process." Id. (quoting U.S. Indus., 690 F.2d at 462). The court also pointed out that the policy did not include the costs of "making good" faulty construction work and noted "the importance of an event 'extraneous' to the construction process bringing about the loss." Id. at 507.

The insured in Alton Ochsner sought to recover for costs

---

[32] See Doc. 27-1, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Ins. Policy p. 34.

associated with fixing cracks in a building's foundation. Id. at 504. The court found that this was not covered under the policy because the only costs sought were for those associated with repairing the cracked foundation, which the court found was excluded by the policy, and the insured could not point to any resulting damage that was not excluded. Id. at 507. In distinguishing between excluded "faulty workmanship" and covered "property damage," the court looked to whether the event that instigated the loss was "extraneous" to the construction process. id. If it was, then the loss was not a result of faulty workmanship. Id. Further illustrating its point, the court stated, "if shoddy plumbing work caused pipes to break and a building to flood, damaging the carpet, the policy would cover the cost of replacing the carpet but not the cost of repairing or replacing the shoddy plumbing job." Id.

In CenterPoint Energy, Inc. v. Associated Electric & Gas Insurance Services Ltd., No. 09-2107, 2010 WL 11468795, at **2-3 (S.D. Tex. Sept. 2, 2010)(unpublished), the insureds constructed a pipeline that, due to a nine-hundred-foot dent discovered after installation was complete, could not be repaired and had to be abandoned. Id. at *3. The insureds constructed a new pipeline nearby which cost $3.8 million and submitted a claim for this amount; their insurers denied the claim, citing the faulty workmanship exclusion. Id. The court explained that "the question

is whether [the insureds] seek to recover the cost to repair that workmanship, or the damages that resulted from that workmanship." Id. at 6.

The court looked to Alton Ochsner for guidance, finding that "the alleged 'faulty workmanship' at issue is the first installation project, which [the insureds were] forced to 'repair' by completing the second installation. Because [the insured's] claim is one for the costs incurred to repair, or rectify, faulty workmanship or design, it is not an 'ensuing loss' under the policies." Id. The court denied the motion for summary judgment, finding a fact question existed whether faulty workmanship actually occurred. Id.

Here, the court must consider whether Plaintiff is seeking to recover the costs to repair its faulty workmanship or the ensuing loss damages that resulted from that workmanship. The damage to the original pilot hole caused by the lost drill string required Plaintiff to drill another hole and to abandon the first attempt on the project. Responding to Defendant's first motion for summary judgment, Plaintiff claimed it was seeking damages for "loss of the pipeline structure," "cost of two different downhole specialists to attempt to unblock the hole," and "the cost to hire a new subcontractor to redrill a secondary pipeline structure twenty feet below the blocked structure."[33] In Plaintiff's second response, it

---

[33] See Doc. 28, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 7.

states that it is seeking damages for physical damage to the pilot hole but is not claiming losses for repairs to that pilot hole or trying to make good the faulty workmanship on that hole. However, Plaintiff's attempt to distinguish between the faulty workmanship on the broken guide wire and the loss of the drill string with damage to the pilot hole is without merit. Like the plaintiffs in <u>CenterPoint Energy</u>, Plaintiff is seeking to recover the costs of losing the original hole and drilling a new pilot hole, which is a claim for the costs to repair faulty workmanship, not an ensuing or resulting loss under the Policy. The facts alleged by Plaintiff do not raise a fact issue of the application of the ensuring loss exception.

Finding Plaintiff's claim implicates the faulty workmanship exclusion, the court considers whether there is a fact issue as to its application in this case. Defendant argues there is no fact issue, pointing to Plaintiff's evidence that states that "Isaack's drill stem became stuck through the negligence or other fault of Isaacks."[34] Additionally, Wochner testified that the drill stem became stuck in the pilot hole due to the guide wire breaking, which impeded the flow of mud in the drilling process.[35] Plaintiff does not challenge this in its response. Because there is no fact

---

[34] <u>See</u> Doc. 30, Def.'s 2$^d$ Mot. for Summ. J. p. 9 (citing Doc. 30-3, Ex. 3 to Def.'s 2$^d$ Mot. for Summ. J., Pl.'s Suppl. Answers to Def.'s Interrogs.).

[35] Doc. 31-9, Ex. 5 to Pl.'s Resp. to Def.'s 2$^d$ Mot. for Summ. J., Dep. of Ron Wochner pp. 24-25.

issue that the faulty workmanship exclusion applies and the court has determined that the resulting or ensuing loss exception does not apply, coverage is barred.[36]

### V. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED IN PART AND DENIED IN PART** and Defendant's motions be **GRANTED IN PART AND DENIED IN PART.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 28th day of February, 2018.

_____
U.S. MAGISTRATE JUDGE

---

[36] As the court has determined that the faulty workmanship exclusion applies, it need not reach the other exclusions cited by Defendant in this case.